Daniel Shay (SBN 250548)
Dan@ShayLegal.com
Harrison J. Lynch (SBN 355139)
Harrison@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
P: 619-222-7429

Joshua Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio S, Suite 308
San Diego, CA 92108
P: (866) 219-3343

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHLEY JONES, individually and for all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BELL PARTNERS, INC.,<br><br>Defendant. | Case No: 5:26-cv-02214-KK-SP<br><br><u>CLASS ACTION</u><br><br>**FIRST AMENDED COMPLAINT**<br><br>1. Breach of Contract<br>2. Tenant Protection Act of 2019, Cal. Civ. Code § 1947.12<br>3. Unfair and Deceptive Business Practices, Cal. Bus. & Prof. Code § 17200 et seq<br>4. Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq<br>5. Statutory Larceny, Cal. Pen. Code §§ 484 & 496<br>6. Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 & 1964(c)<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Ashley Jones ("Plaintiff") brings this class action on behalf of herself, and the Class defined below, against Defendant Bell Partners, Inc. ("Defendant") for violating tenant protection laws. Plaintiff makes these allegations based on personal knowledge and investigation conducted by her attorneys.

## INTRODUCTION

1. Defendant purchases multifamily rental properties that are seen as underperforming. Defendant then attempts to increase the revenue received from each unit by systematically inflating rent to what it perceives to be market value.

2. Defendant raises rent for its tenants without providing any notice to its tenants of the rent increase. Tenants, like Plaintiff, are surprised to learn that their rent was suddenly increased from one month to the next. They usually discover the increase in the "residential portal" online when they go to pay their rent.

3. While Defendant phases in rent increases over months, Defendant also attempts to correct underperforming units by fraudulently inducing its tenants into signing new leases with substantially different terms by representing such leases are mandatory. Such new leases are not mandatory, and they contain hidden rent increases.

4. For example, Defendant increased Plaintiff's rent on or around December 1, 2025, and again on or around March 1, 2026, which resulted in an increase of nearly 15.5% in rent without any notice to Plaintiff.

5. Then, on or around April 22, 2026, Defendant attempted to deceive Plaintiff into signing a new rental agreement, which, in part, included another rent increase of approximately 7.5%, which was to take effect earlier that same month.

6. Defendant has now attempted to raise Plaintiff's rent without any notice by a total of approximately 24.14% over the course of five (5) months.

7. Not only were these actions taken in bad faith, but they were made with the intention to defraud unsuspecting tenants, like Plaintiff, and increase overall profitability of each rental unit.

///

8. As a result of Defendant's conduct, Plaintiff and Class Members have been harmed and damaged in several ways.

9. Defendant should not be allowed to steal, defraud, and threaten unsuspecting and vulnerable tenants with illegal bullying tactics Defendant knows it should not be using.

10. Plaintiff, on behalf of herself and all others similarly situated, alleges claims for (1) Breach of Contract (2) Violations of the Tenant Protection Act of 2019, Cal. Civ. Code § 1947.12 (3) Violation of the California Unfair Competition Law , Cal. Bus. & Prof. Code § 17200, et seq (4) Violation of the Rosenthal Fair Debt Collection Practices Act. Cal. Civ. Code § 1788 et seq (5) Statutory Larceny, Cal. Pen. Code §§ 484 & 496 and (6) Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 & 1964(c). Plaintiff and the Class Members seek damages from Defendant, and to compel Defendant to adopt and follow California law regarding rent increases for residential tenancies.

## JURISDICTION AND VENUE

11. The Court has federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff's RICO claims arise out of violation of federal law 18 U.S.C. § 1961.

12. This Court has supplemental jurisdiction for Plaintiff's state law claims under 28 U.S.C. § 1367(a).

13. Jurisdiction, alternatively, is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff and all Class Members are citizens of California, while Defendant is incorporated in North Carolina with its principal place of business in North Carolina, there will be at least one hundred (100) class members, and the amount in controversy exceeds $5,000,000.

14. In addition to injunctive relief, Plaintiff and Class Members are requesting damages related to the rent increases —When aggregated across the proposed class of at least one hundred (100), but potentially thousands of Californians, the damages, fees and costs will exceed the $5,000,000 threshold for CAFA jurisdiction.

15. Both the diversity requirement and the damages requirement under CAFA are met, and this Court has jurisdiction.

16. Because Defendant has locations in California and directly conducts business in California, personal jurisdiction is established.

17. Venue is proper pursuant to 28 U.S.C. § 1391 because (1) Plaintiff resides in the County of Riverside, State of California, within this judicial district (2) the conduct complained of herein occurred within this judicial district and (3) Defendant conducts business within this judicial district.

## PARTIES

### A. Plaintiff

18. Plaintiff is an individual over the age of eighteen years, and at all times relevant herein was and is, a resident of the County of Riverside in the State of California.

19. Plaintiff is a tenant at an apartment complex in Murrieta, California, which was purchased by Defendant sometime in 2024 (the apartment complex shall be referred to herein as "Bell Apartments").

20. Plaintiff and every putative class member was a resident of California at the time their claims accrued, as the conduct alleged of herein directly impacts Plaintiff's and each putative class members' residential dwelling. The acts and omissions that caused all injuries complained of herein occurred within California.

### B. Defendant

21. Defendant is incorporated and headquartered in North Carolina. It is a multifamily property management company that operates numerous apartment communities throughout California, and many across the United States. According to Defendant's website, Defendant operates at least six (6) apartment communities across the state of California.[1]

---

[1] *See* Defendant's website (https://bellpartnersinc.com/communities/?search=California&searchproperties=Submit&hiddenDuid=94daa886-a056-4e17-a24c-9f1acb789fb1&hiddenSid=833f8a71-37a1-4468-970f-09797f857edd) (last accessed April 27, 2026)

22. Defendant was Plaintiff's and Class Members' landlord at all times relevant.

## FACTUAL ALLEGATIONS

### A. Background

23. In July 2014, Plaintiff moved into a unit at what later became Bell Apartments, pursuant to a written lease agreement.

24. On or around August 1, 2022, approximately eight (8) years later, Plaintiff entered into a new written lease with her landlord at that time. This written lease between Plaintiff and Defendant's predecessor contains the controlling contract terms.

25. Between July 2014 and October 2023, Plaintiff's base rent increased incrementally from $1,330 to $2,034. Around April 2024, approximately ten (10) years after Plaintiff took possession of the premises and two (2) years after signing a new lease, Defendant became the property manager for Bell Apartments and became Plaintiff's landlord.

26. Defendant assumed the responsibilities of the previous landlord under the written lease and became responsible for handling the day-to-day operations at Bell Apartments, which include drafting lease agreements and managing the revenue of each apartment.

### B. Defendant's Acts of Rent Increase

27. Around December 1, 2025, Defendant, without any notice to Plaintiff, elected to raise Plaintiff's rent by charging Plaintiff an additional $152 per month starting that same day. This represents a rent increase of approximately 7.47%.

28. Plaintiff, upset with the increase but unwilling to lose her home, paid the demanded sum.

29. Around March 1, 2026, Defendant, unsatisfied with the extra rent money it was receiving from Plaintiff, raised Plaintiff's rent again—without any written notice—by an additional $163 per month, starting that same day. This represents a second rent increase of approximately 7.46% when compared to the base rent the month

before.

30. Plaintiff, even more upset with the increase but still unwilling to lose her home, paid the demanded sum.

31. On or around April 22, 2026, Defendant sent Plaintiff a new written lease under the guise of a month-to-month lease renewal. This new lease contained several significant changes and addendums that were not present in Plaintiff's most recent lease from 2022. Importantly, the new lease (i) had an effective date of April 10, 2026 (10 days before being presented to Plaintiff), (ii) required that Plaintiff pay prorated rent of $1,767.50, and (iii) raised Plaintiff's rent, again, by $176, which is an additional increase of approximately 7.49%, for a total of approximately 24.14% over the course of five (5) months.

32. Defendant informed Plaintiff that she needed to sign the new lease or vacate her home.

**C. Defendant's Acts of Theft and Fraud**

33. Unfortunately for tenants of Defendant's portfolio, Defendant uniformly, systematically, and in bad faith raises rent without notice and in amounts that exceed statewide rent caps, in violation of California law.

34. Defendant has a centralized rent policy for all the California properties under its portfolio. It develops, promulgates, and administers rent increase policies and practices uniformly across its California controlled and/or managed properties.

35. Defendant's policies and procedures amount to illegal activity, resulting in repeated acts of larceny.

36. <u>Statutory Larceny.</u> To commit statutory larceny in California, one must: (i) take the personal property, (ii) of another, (iii) without consent, and (iv) with the intent to permanently deprive the owner of that property.[2]

37. Liability is imposed upon all the actors who commit those acts outlined above, and those who knowingly aid and abet such actors, or those who knowingly

---

[2] Cal. Pen. Code § 484

receive such stolen property.[3]

38. Defendant has developed common policies, practices, procedures or schemes designed to steal money from current and former tenants, without consent, to benefit itself, with the intention of permanently depriving the money from the current and former tenants.

39. Such money is stolen pursuant to false and fraudulent misrepresentations as outlined above, which are made knowingly and by design, pursuant to common policies, practices, procedures or schemes. Defendant uses such fraudulent misrepresentations to increase rent and intentionally deceive tenants into signing new leases ratifying rent increases. Defendant is not ignorant of its illegal conduct. Defendant knows that it is stealing money from its tenants, or otherwise knowingly aids and abets the theft of such property.

40. Federal Wire Fraud. To commit wire fraud, one must (i) have a scheme to defraud someone out of money or property, (ii) by making a material misrepresentation or omission, (iii) with the intent to defraud, and (iv) effectuate such scheme by wire transmission.[4] Defendant is operating pursuant to a scheme to defraud former tenants out of money or property in that they are unlawfully raising rent and requiring tenants to pay such unlawful rent.

41. Defendant, on behalf of itself and the legal owners of the properties that it manages, asserts a purported lawful basis for the raised rent by demanding and accepting unlawfully raised rent, thereby representing that the increase was lawful. Such representations to tenants regarding unlawful rent increases are material, false, and done with the intention to defraud.

42. Defendant committed, attempted to commit, or conspired to commit an offense under 18 U.S.C. § 1349 and is thus equally liable to any other member of its enterprise.

---

[3] Cal. Pen. Code § 496

[4] 18 U.S.C. § 1343

43. Defendant sent electronic messages (through its resident portal, which are each wire transmissions) to Plaintiff and Class Members. Each message (i) was sent as part of a scheme to defraud someone out of money or property, (ii) made at least one material misrepresentation or omission, (iii) was sent with the intent to defraud, and (iv) sent by wire transmission.

44. Defendant demanded and retained unlawfully raised rent. The payments of such unlawful rent were made by electronic transfer. Each such act, coupled with the resident portal communications, constitutes wire fraud in violation of 18 U.S.C. § 1343 because Defendant was acting to further the scheme it had devised to defraud tenants out of money or property, as alleged above.

45. All such acts outlined in the preceding six (6) paragraphs were related and continuous.

**D. Plaintiff and Class Members Suffered Damages**

46. Defendant's policies, practices, procedures, and schemes have caused Plaintiff and Class Members to be damaged. Plaintiff and Class Members have suffered monetary damages in the form of unlawful rent increases they paid monthly for many months or years.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All persons who were tenants of residential properties in California owned and/or managed by Defendant, within four (4) years prior to the filing of the Complaint through the date of class certification, and from whom Defendant raised any monthly rent.

48. Excluded from the Class are Defendant, its officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which either Defendant has a controlling interest, and any Judge assigned to this case and their immediate family members.

49. Plaintiff reserves the right to amend or modify the definition of the Class

to provide greater specificity and/or further division into subclasses or limitation to particular issues.

50. **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are hundreds if not thousands of class members in the Class. The identities of the Class Members are ascertainable and can be determined based on records maintained by Defendant.

51. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only individual class members. The questions of fact and law that are common to the Class Members and predominate over questions that may affect individual Class Members, include, but are not limited to:

a) Whether Defendant raised Plaintiff's and the Class Members' monthly rent;
b) Whether Defendant gave prior written notice of such rent increases;
c) Whether such notices, if given, were provided at least thirty (30) days in advance of the rent being increased;
d) Whether such rent increases violate the TPA rent cap provision;
e) Whether such rent increases are unlawful;
f) Whether such rent increases are considered "debts;"
g) Whether Defendant engaged in unfair or deceptive business practices;
h) Whether Defendant engaged in larceny;
i) Whether Defendant caused Plaintiff and Class Members damages;
j) Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, other monetary relief, or equitable relief;
k) Whether Defendant violated the California Unfair Competition Law (Business & Professions Code § 17200, et seq);
l) Whether Defendant was part of an enterprise;

m) Whether there were two predicate criminal acts within the previous ten (10) years for liability under RICO;

n) Whether Defendant engaged in wire fraud;

o) Whether Defendant engaged in racketeering;

p) Whether Plaintiff and class members are entitled to relief under RICO.

52. **Typicality:** Plaintiff's claims are typical of those of other Class Members because they all had their rent increased due to Defendant's same conduct.

53. **Adequacy:** Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the other members of the Class she seeks to represent. Plaintiff is represented by experienced and competent attorneys ("Class Counsel") who have litigated numerous class actions. Class Counsel intends to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all members of the Class.

54. **Superiority**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There is no foreseeable difficulty in managing this action as a class action and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## First Cause of Action

## Breach of Written Contract

55. Defendant, on one hand, is a party to the written leases between Plaintiff and Class Members, on the other hand.

56. Each written lease is substantially the same, and each lease governs the

hiring of a residential property for a fixed term.

57. When a fixed-term lease expires, and the landlord continues to collect or accept rent, the parties have legally renewed their lease as a periodic month-to-month tenancy, with all other terms, including rent, carrying over into the renewal under Cal. Civ. Code § 1945.

58. Plaintiff and Class Members remained in their units after the expiration of their fixed-term leases and continued paying rent to Defendant. Plaintiff and Class Members thus had periodic tenancies pursuant to written leases.

59. Cal. Civil Code § 827 is the California law that addresses contract modification for residential tenancies and applies to periodic tenancies—e.g., tenancies with a term of month-to-month or shorter—and does not apply to longer fixed-term leases.

60. Under Cal. Civ. Code § 827, a landlord is required to give a tenant written notice of a rent increase at least thirty (30) days prior to the date that the rent increase is to take effect for the rent increase to be effective.

61. Defendant did not give written notice of at least thirty (30) days prior to raising Plaintiff's and Class Members' rent. Therefore, no contractual modification raising rent took effect. Thus, Defendant was only entitled to demand and collect the rent allowed by the written lease prior to any purported modification.

62. Defendant breached the written agreements by illegally demanding payments and accepting payments in excess of the amounts it was contractually able to collect. Defendant was prohibited from demanding and accepting such unlawful payment under the contract because Defendant could only demand what it was legally owed.

63. Plaintiff and Class Members were harmed because they paid more than they were obligated to pay under the written lease.

64. Defendant's breach of contract was a substantial factor in causing Plaintiff's and Class Members' harm.

65. Plaintiff and Class Members are entitled to damages resulting from Defendant's breach of contract, in addition to reasonable attorney's fees.

**Second Cause of Action**

**Tenant Protection Act of 2019**

**Cal. Civ. Code § 1947.12**

66. The rent increase cap of the Tenant Protection Act of 2019 (Cal. Civ. Code § 1947.12) (the "TPA") applies to residential tenancies, subject to certain exceptions.

67. The exceptions to the TPA do not apply to Plaintiff's or Class Members' tenancies, so the rent cap increase provisions of TPA apply.

68. Under Cal. Civ. Code 1947.12(a), a rent increase is capped at two (2) increases per year and shall not, over the course of a 12-month period, increase the gross rental rate for a dwelling or a unit more than the lower of 10 percent or 5 percent plus the percentage change in the cost of living from the base rent.

69. Cal. Civ. Code 1947.12(e) requires that rent increases be served according to Cal. Civil Code § 827.

70. Under Cal. Civ. Code § 827, a landlord is required to give a tenant written notice of a rent increase at least thirty (30) days prior to the date that the rent increase is to take effect.

71. Defendant did not give Plaintiff or Class Members at least thirty (30) days' written notice of rent increases prior to the increases taking effect.

72. Defendant increased rent, or attempted to increase rent, more than twice in a twelve-month period.

73. Defendant's increases to rent exceeded the statutory maximum allowed under Cal. Civ. Code 1947.12(a).

74. Defendant, after accepting rent after the expiration of the fixed-term leases, attempted to have Plaintiff and Class Members enter new fixed-term leases, which raised the rent without proper notice.

75. By failing to give adequate notice of the rent increases, by increasing rent

more than two (2) times in a twelve-month period, and/or by increasing the rent beyond the maximum amount permitted under Cal. Civ. Code 1947.12(a), the amount of increased rent is invalid and illegal under Cal. Civ. Code § 827.

76. Defendant, despite the increased rent being invalid, nonetheless demanded and accepted the invalid rent amounts.

77. As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members suffered damages.

78. Pursuant to Cal. Civ. Code 1947.12(k)(1), Plaintiff and Class Members are seeking injunctive relief, actual damages, reasonable attorney's fees and costs, and treble damages.

## Third Cause of Action

## Unfair and Deceptive Business Practices

## Cal. Bus. & Prof. Code § 17200 et seq.

79. Under §17200 of the California Business and Professions Code, "any unlawful, unfair or fraudulent business act or practice" constitutes "unfair competition."

80. The violations of the California Civil Code and other wrongdoing alleged herein constitute unlawful, unfair and/or fraudulent business acts and practices, and therefore "unfair competition," for the purposes of § 17200 of the California Business and Professions Code. Defendant's increase of rent without prior written notice and collections of rent are unlawful, which entitles Plaintiff and Class Members to restitution under the UCL.

81. Plaintiff and Class Members have suffered financial injuries in fact and have lost money and/or property as a result of such unfair competition.

82. The facts set forth above establish that Plaintiff and Class Members are entitled to judgment against Defendant, awarding restitution to Plaintiff and Class Members of all monies acquired by means of the described unfair competition, including all unlawfully increased rent.

83. Plaintiff and Class Members are further entitled to declaratory and injunctive relief establishing the rights and obligations among the parties and for an order mandating Defendant to adhere to the requirements of law.

## Fourth Cause of Action

## Rosenthal Fair Debt Collection Practices Act

## Cal. Civ. Code § 1788 et seq.

84. In enacting the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33 ("RFDCPA"), the California Legislature found that "[u]nfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers [that] [t]here is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other" and that it was necessary to ". . . prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1.

85. Defendant is a debt collector within the meaning of Cal. Civ. Code § 1788.2(c) because in the ordinary course of business it regularly collects consumer "debts," including but not limited to rental payments (delinquent or otherwise) and other charges. Rental payments include the unlawfully increased sums.

86. The RFDCPA prohibits unfair and deceptive conduct. *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1084 (2019). Defendant violated the RFDCPA by (1) initiating contact with Class Members to collect fees and charges Defendant knew or should have known had been procured through fraud, and that, even if valid, they would be subject to a vast array of potential defenses and (2) accepting and retaining payments made on these invalid rent increases.

87. The foregoing acts and omissions constitute multiple violations of the RFDCPA against Defendant and the violations were knowing and willful.

88. As a result of each and every violation of the RFDCPA, Plaintiff and each Class Member is entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a), statutory damages in the amount up to $1,000 pursuant to Cal. Civ. Code § 1788.30(b), and reasonable attorney fees and costs pursuant to Cal. Civ. Code § 1788.30(c).

**Fifth Cause of Action**

**Statutory Larceny**

**Cal. Pen. Code §§ 484 & 496**

89. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

90. Cal. Pen. Code § 496 imposes liability upon:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]

91. Cal. Pen. Code § 484, which defines "theft", states in pertinent part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

92. Under California law, Plaintiff's and Class Members' monthly rent payments constitute property that can be the subject of theft.

93. Defendant acted in a manner constituting theft by fraudulently appropriating property which has been entrusted to them, with the specific intent to deprive Plaintiff and Class Members of their property.

94. Defendant acted in a manner constituting theft by defrauding Plaintiff and Class Members of money by making a false or fraudulent representation or pretense, with the specific intent to deprive Plaintiff and Class Members of their property.

95. Under California law, the amounts Plaintiff and Class Members paid in increased rent constitute property that can be the subject of theft.

96. Defendant acted in a manner constituting theft by defrauding Plaintiff and Class Members of money by making a false or fraudulent representation or pretense, with the specific intent to deprive Plaintiff and Class Members of their property.

97. Plaintiff and Class Members did not consent to any of Defendant's actions to take Plaintiff and Class Members money or property.

98. Pursuant to Cal. Pen. Code § 496(c), Plaintiff and Class Members are entitled to treble damages, as well as attorneys' fees and costs as a result of Defendant's violations of Cal. Pen. Code § 496(a).

**<u>Sixth Cause of Action</u>**

**Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962(c) & 1964(c)**

99. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs.

100. Under 18 U.S.C. § 1964(c), individuals have the right to sue for damages if their property is harmed by violation of 18 U.S.C. § 1962 of the RICO.

101. That section of the RICO, 18 U.S. Code § 1962(c), states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

> enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

102. Defendant engages in conduct directed at Plaintiff and Class Members as part of an enterprise because it has standardized practices as part of its business model that impact Plaintiff and Class Members, as alleged throughout this Complaint.

103. Defendant and various legal entities formed either an association-in-fact or pursuant to contract by virtue of a property management agreement, having as its ostensible purpose the creation of a landlord enterprise that would, in part, assess unlawful rent increases against its tenants to maximize profits.

104. The enterprise is comprised of Defendant and many individual property owners—in Plaintiff's case, the owner is "Bell Value-Add Fund VIII Murrieta, LLC"—which includes the organizing groups of agents and employees of each ownership entity and Defendant. The property owners knowingly participate in and benefit from the enterprise's conduct by receiving the rental revenue collected by Defendant on their behalf, including the unlawfully increased portions of that revenue, and by authorizing Defendant's rent-setting and collection practices through the property-management agreements. The extent of the enterprise is presently unknown, since each individual owner for each property that Defendant manages is unknown.

105. Defendant conducted and participated in the conduct of the enterprise's affairs by developing, promulgating, and administering centralized rent-increase policies and practices applied uniformly across the enterprise's California properties; by making the operational decisions about which tenants would be subject to rent increases, the amount of those increases, and the timing of their imposition; by drafting and presenting the lease and lease-renewal documents through which some of the increases were imposed; by controlling the resident portal through which the rent demands were communicated and through which payments were collected and some increases were administered; and by collecting, processing, and disbursing the rent payments made by tenants.

106. Such mechanisms employed to maximize profits included devising a scheme of racketeering activity, namely wire fraud. Defendant did so to further the fraudulent purpose of increasing revenue by raising rent in an illegal manner. Such association or contractual relationship was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

107. The pattern of racketeering activity engaged in by Defendant has persisted from at least 2025 to present, when Plaintiff's rent was initially increased without notice. Each month thereafter, Defendant would unlawfully demand and collect illegally raised rent. Each act is an act of racketeering activity with respect to Plaintiff. These actions are part of a pattern that precedes Plaintiff and extends to other Class Members, meaning that an unknown number of Class Members have been subject to such racketeering activity for a presently unknown period of time, but since at least 2025. The pattern is Defendant's regular way of conducting the enterprise's affairs and, absent injunctive relief, threatens to continue indefinitely.

108. Defendant, in its role as owner and/or property manager, collected all payments made from defrauded tenants and oversaw all communications with the tenants. In these communications, Defendant furthered the fraud by engaging in a systemic practice of concealing from the tenants the fact that the rent increases were illegal and such tenants had the right to not pay the charges and fees. Additionally, by not providing adequate notice of the rent increase, Defendant was not entitled to collect any portion of the increased rent, but it knowingly and fraudulently did so nonetheless.

109. Defendant kept the unlawful portions of the increased rent that were collected over the course of years and earned millions of dollars in illegal rent increases.

110. In its operation of the collection of the rent from current and former tenants, Defendant relied on the interstate wire system, sending and receiving thousands of resident portal communications, emails, and ACH transmissions.

111. Using the interstate wire system, Defendant sent presumably thousands of demands for payment from current and former tenants, demanding payment of the rent increases which were designed to motivate payments from confused or worried tenants, just like it did to Plaintiff specifically and repeatedly.

112. Every payment made online through Defendant's online rent payment portal by Plaintiff and Class Members constitutes a discrete transaction in which Defendant perpetuated its scheme of defrauding current tenants out of money or property by making material misrepresentations or omissions through wire transmission. Every demand Defendant made to be compensated for raised rent constitutes an individual act of wire fraud in violation of the United States Code. Every payment, which was made on a monthly basis, by Plaintiff and Class Members, for illegal rent increases is itself an individual act of wire fraud in violation of the United States Code.

113. Pursuant to 18 U.S.C. § 1964(c), Plaintiff and the Class have suffered injury to their property by Defendant's violations of 18 U.S.C. § 1962 because Plaintiff and Class Members are victims of Defendant's schemes. Plaintiff and Class Members are entitled to threefold the damages they sustained and the costs of the suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

1. Certify the Class pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23 (b)(3), and appoint Plaintiff as representative of the Class and her attorneys as Class Counsel;
2. Return of all rent paid pursuant to unlawful rent increases;
3. Injunctive relief, pursuant to Cal. Civ. Code § 1947.12(k)(1), preventing Defendant from collecting rent unlawfully increased and preventing defendant from increasing rent without prior written notice;
4. Actual damages, reasonable attorney's fees and costs, and treble damages

pursuant to Cal. Civ. Code § 1947.12(k)(1).

5. Actual damages, statutory damages, and reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1788.30;
6. Injunctive and other equitable relief as is necessary to protect the interests of members of the Class under Cal. Civ. Code § 1788.30;
7. Treble damages, as well as attorneys' fees and costs, pursuant to Cal. Pen. Code § 496(c);
8. Restitution for all members of the Class under the UCL;
9. Actual Damages for all Class Members, trebled under 18 U.S.C. § 1964(c), and reasonable attorney's fees and costs;
10. An award of compensatory and nominal damages in an amount to be determined;
11. An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;
12. Such other relief as the court deems fair and reasonable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

May 28, 2026

**SHAY LEGAL, APC**

By: *s/ Daniel G. Shay*
Daniel G. Shay
Dan@ShayLegal.com
*Attorneys for Plaintiff*

May 28, 2026

**SWIGART LAW GROUP, APC**

By: *s/ Joshua B. Swigart*
Joshua B. Swigart
Josh@SwigartLawGroup.com
*Attorneys for Plaintiff*